**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DARREN RICHARD GENTILQUORE,  :     No. 3:24-CV-0406
           **Petitioner**       :
                          :     **(Judge Munley)**
    **v.**                :
                          :
MARK R. BROTHERS,          :
           **Respondent**    :

## MEMORANDUM

Petitioner Darren Richard Gentilquore initiated the above-captioned action by filing a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges his 2006 Pennsylvania convictions for attempted murder and aggravated assault. Because Gentilquore filed his Section 2254 petition long after the statute of limitations expired and he has failed to establish that the limitations period should be tolled, the court must dismiss his petition.

## I.    BACKGROUND

The procedural history of Gentilquore's state court proceedings is lengthy and circuitous. In December 2006, following a jury trial, Gentilquore was convicted of multiple counts of attempted murder and aggravated assault. See Commonwealth v. Gentilquore, No. 295 MDA 2019, 2020 WL 1304173, at *2 (Pa. Super. Ct. Mar. 18, 2020) (nonprecedential). On December 21, 2006, he was sentenced to two consecutive terms of 20 to 40 years' imprisonment on the

attempted homicide charges (as the assault offenses merged with the homicide convictions at sentencing), resulting in an aggregate term of 40 to 80 years' imprisonment.  See id.

Gentilquore appealed but, due to his appellate counsel's failure to file a statement under Pennsylvania Rule of Appellate Procedure 2119(f), Gentilquore's challenges to the discretionary aspects of his sentence were deemed waived and his judgment of sentence was affirmed on September 19, 2007.  See id.; Commonwealth v. Gentilquore, No. 547 MDA 2007, 938 A.3d 1113 (Pa. Super. Ct. Sept. 19, 2007) (table).  Gentilquore then timely filed his first petition under Pennsylvania's Post Conviction Relief Act (PCRA), 42 PA. CONS. STAT. § 9541 et seq., which, among numerous other claims, asserted that his attorney had been ineffective for failing to file the Rule 2119(f) statement. See Gentilquore, No. 295 MDA 2019, 2020 WL 1304173, at *2.

The PCRA court ultimately denied the petition.  See id.  But on September 12, 2013, the Superior Court of Pennsylvania—without reaching any other issues—agreed that Gentilquore's appellate counsel had been ineffective for failing to file the Rule 2119(f) statement, reversed the PCRA court's order, and remanded the case with directions for the PCRA court to reinstate Gentilquore's direct appeal rights nunc pro tunc.  See id.; Commonwealth v. Gentilquore, No.

1461 MDA 2012, 2013 WL 11254722, at *1, *4 (Pa. Super. Ct. Sept. 12, 2013) (nonprecedential).

With his appellate rights restored, Gentilquore accordingly filed a second direct appeal. See Gentilquore, No. 295 MDA 2019, 2020 WL 1304173, at *3. However, the Superior Court rejected his arguments (this time properly raised) and affirmed his judgment of sentence. See id.; Commonwealth v. Gentilquore, No. 1860 MDA 2013, 2014 WL 10826236, at *1, *13 (Pa. Super. Ct. Sept. 9, 2014) (nonprecedential). On April 8, 2015, the Supreme Court of Pennsylvania denied Gentilquore's petition for allowance of appeal. See Commonwealth v. Gentilquore, No. 739 MAL 2014, 113 A.3d 278 (Pa. 2015) (table). It does not appear that Gentilquore filed a petition for a writ of certiorari with the Supreme Court of the United States.

Gentilquore timely filed another *pro se* PCRA petition on May 29, 2015. See Gentilquore, No. 295 MDA 2019, 2020 WL 1304173, at *3; Commonwealth v. Gentilquore, No. 981 MDA 2022, 2023 WL 3243499, at *3 (Pa. Super. Ct. May 4, 2023) (nonprecedential). Although this was chronologically Gentilquore's second PCRA petition, because his direct appeal rights had been reinstated based on his first collateral attack, it was treated procedurally as an initial PCRA petition. See Gentilquore, No. 981 MDA 2022, 2023 WL 3243499, at *3 n.3 (citing Commonwealth v. Vega, 754 A.2d 714, 716 n.3 (Pa. Super. Ct. 2000)).

The PCRA court appointed Joseph McGraw, Esq., to represent Gentilquore in his post-conviction proceedings. See id., at *3. Attorney McGraw filed an amended "first" (chronologically second) PCRA petition, raising fourteen claims of ineffective assistance of trial counsel. See id.

Following several continuances, an evidentiary hearing, and post-hearing briefing, the PCRA court denied Gentilquore's petition. See id. Gentilquore timely appealed, with Attorney McGraw remaining as PCRA appellate counsel. See id., at *3 & n.2. In that PCRA appeal, Gentilquore raised three claims of trial counsel ineffectiveness. See id., at *3. On March 18, 2020, the Superior Court denied those claims on the merits. See id. Gentilquore did not seek allowance of appeal in the Pennsylvania Supreme Court. See id.

Instead of filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in federal court raising his exhausted claims, Gentilquore returned to state court and filed a "second" (chronologically third) pro se PCRA petition. See id. In that petition, he asserted that Attorney McGraw—PCRA counsel for his "first" (chronologically second) PCRA petition and its appeal—was ineffective for failing to argue on PCRA appeal that amendments to the Castle Doctrine, 18 PA. CONS. STAT. § 505, should apply retroactively to his case. Gentilquore, No. 981 MDA 2022, 2023 WL 3243499, at *3. He additionally claimed that the PCRA court's imposition of restitution was unlawful. Id.

4

On April 4, 2022, the PCRA court denied Gentilquore's second PCRA petition. See id. Gentilquore moved for reconsideration on April 11, 2022, and on April 21, 2022, the PCRA court issued an order scheduling a hearing on June 10, 2022, for the reconsideration motion. Id. Notably, the PCRA court's April 21, 2022 order "did not expressly grant reconsideration." Id. Following the hearing, the PCRA court entered an order granting in part and denying in part Gentilquore's motion for reconsideration. Id. Specifically, the PCRA court granted reconsideration as to the restitution issue and denied reconsideration in all other respects. Id.

Gentilquore once again appealed. Id. However, on May 4, 2023, the Superior Court of Pennsylvania quashed that appeal as untimely. See id., at *4-6. Applying well-settled Pennsylvania law, the panel reasoned that the PCRA court's April 21, 2022 order (which set a hearing date for the motion for reconsideration) did not expressly grant reconsideration and therefore did not toll the 30-day time period for filing a notice of appeal established by Pennsylvania Rule of Appellate Procedure 903(a). See id., at *5 (citing Commonwealth v. Moir, 766 A.2d 1253, 1254 (Pa. Super. Ct. 2000); PA. R. APP. P. 903(a)). As the Superior Court explained, although the PCRA court's April 21, 2022 order scheduled a hearing on the motion for reconsideration, "such action by itself does not toll the appeal period." Id. (citing Moir, 766 A.2d at 1254 (holding that trial

court's action of scheduling a hearing on a motion for reconsideration was insufficient to toll appeal period)).  The panel accordingly held that the appeal period had not been tolled and that Gentilquore's July 11, 2022 notice of appeal was therefore untimely, so the Superior Court was "without jurisdiction to address his appeal" and was constrained to quash it.  Id., at *5-6.

The Superior Court additionally noted as follows:

> In any event, even if [Gentilquore] had filed a timely appeal, we would conclude that his second PCRA petition was untimely. [Gentilquore]'s judgment of sentence became final on July 7, 2015, ninety days after the Pennsylvania Supreme Court denied [his] petition for allowance of appeal, when the time for petitioning for a writ of certiorari in the United States Supreme Court expired.  See 42 PA. CONS. STAT. § 9545(b)(3); U.S. Sup. Ct. Rule 13.  Accordingly, [Gentilquore] had until July 7, 2016, to file a timely PCRA petition.  See 42 PA. CONS. STAT. § 9545(b)(1).  Here, [Gentilquore]'s second [chronologically third] PCRA petition was not filed until May 14, 2020, and as such, it is patently untimely.  Further, [Gentilquore] did not allege and prove an exception to the time bar pursuant to Section 9545(b)(1)(i)-(iii).  Although the PCRA court held a hearing and denied [Gentilquore]'s second PCRA petition for lack of merit, [Gentilquore]'s petition was untimely, and therefore, the PCRA court did not have jurisdiction to address the merits of his claims.  See [Commonwealth v. ]Ballance, 203 A.3d [1027, 1031 (Pa. Super. Ct. 2019)].  Accordingly, even if [Gentilquore] had filed a timely appeal, we would conclude that [his] second PCRA petition was untimely, and we would affirm the PCRA court's order denying [his] petition on the basis that it was untimely filed.  See Commonwealth v. Beck, 848 A.2d 987, 991 n.8 (Pa. Super. Ct. 2004) (holding that we may affirm the PCRA court's decision if it is correct on any basis).

Id., at *5 n.6.

Gentilquore filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on February 6, 2024.  See Commonwealth v. Gentilquore, No. 400 MAL 2023, 2024 WL 442511 (Pa. Feb. 6, 2024) (table).  On March 4, 2024, he lodged the instant Section 2254 petition in this court.  (See generally Doc. 1; see id. at 14).  Respondent, with leave of court, filed a partial answer to Gentilquore's petition, asserting a threshold argument that the petition is barred by the statute of limitations.  (See generally Doc. 14).  Gentilquore timely filed a traverse, (Doc. 19), and his Section 2254 petition is therefore ripe for disposition.

## II.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. §§ 2241-2254, mandates that petitioners demonstrate that they have "exhausted the remedies available in the courts of the State" before seeking federal habeas relief.   28 U.S.C. § 2254(b)(1)(A).  An exhausted claim is one that has been "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process," and which has been adjudicated on the merits.  Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999)); see also Johnson v. Williams, 568 U.S. 289, 302 (2013).

If a state prisoner has not fairly presented a claim to the state courts "but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play." Carpenter, 296 F.3d at 146 (citations omitted). Generally, if a prisoner has procedurally defaulted on a claim by failing to raise it in state-court proceedings, a federal habeas court will not review the merits of the claim, even one that implicates constitutional concerns. Martinez v. Ryan, 566 U.S. 1, 9 (2012) (citing Coleman v. Thompson, 501 U.S. 722, 747-48 (1991); Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977)).

A few limited exceptions to this rule exist. One exception is that "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Id. at 10 (citing Coleman, 501 U.S. at 750). "Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." Maples v. Thomas, 565 U.S. 266, 280 (2012) (alterations in original) (citations and internal quotation marks omitted). To establish prejudice, a petitioner must show not merely that errors existed that created a possibility of prejudice, but that they "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Holland v. Horn, 519 F.3d 107, 112 (3d Cir. 2008) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). If the

petitioner establishes cause and prejudice, the federal court reviews the claim *de novo* "because the state court did not consider the claim on the merits." Bey v. Superintendent Greene SCI, 856 F.3d 230, 236 (3d Cir. 2017), cert. denied sub nom. Gilmore v. Bey, 138 S. Ct. 740 (2018) (mem.) (citation omitted).

Another rare exception that excuses a procedural default is where the petitioner can establish that "failure to consider the claim will result in a fundamental 'miscarriage of justice.'" Carpenter, 296 F.3d at 146 (quoting Coleman, 501 U.S. at 750). To satisfy the "fundamental miscarriage of justice" exception, a petitioner typically has to demonstrate actual innocence. Leyva v. Williams, 504 F.3d 357, 366 (3d Cir. 2007) (citation omitted).

## III.    DISCUSSION

Gentilquore raises four grounds for relief in his Section 2254 petition. (See Doc. 1 at 5-10). First, he asserts that his trial counsel was ineffective for at least five different reasons, including failing to adequately prepare for trial and file unspecified "pretrial motions," failing to request a self-defense jury instruction, failing to request a toxicology report from the victims, failing to object to late-filed prosecution exhibits, and permitting disclosure at trial of Gentilquore's request for an attorney during police interrogation. (Id. at 5).

Gentilquore's second and third grounds for relief overlap and essentially raise one issue. He asserts that state criminal law[1] was amended after his conviction and he posits that because his direct appeal rights were reinstated after that amendment, he could have sought retroactive application of the amendment to his case on direct appeal. (See id. at 6-9). Gentilquore alleges, however, that his appellate attorney, Robert M. Buttner, Esq., was ineffective because Attorney Buttner failed to argue that this amendment was *procedural* with retroactive application and instead erroneously argued that it was a substantive change in law. (Id.)

Finally, Gentilquore asserts in his fourth ground for relief that Attorney McGraw was ineffective during the litigation of the "second" (chronologically third) PCRA petition. (Id. at 9-10). Gentilquore contends that Attorney McGraw ignored his repeated requests (verbally, in writing, and through his Power of

---

[1] The specific legislative modification that Gentilquore invokes is an amendment to 18 PA. CONS. STAT. § 505—Pennsylvania's "Castle Doctrine," which was first codified in 1972. (See Doc. 1-3 at 5); Commonwealth v. Childs, 142 A.3d 823, 829 (Pa. 2016). Specifically, Gentilquore cites the 2011 addition of Section 505(b)(2.1). (See Doc. 1-3 at 5-6). This subsection creates an evidentiary "presumption" that "an actor is presumed to have a reasonable belief that deadly force is immediately necessary to protect himself" if both (1) "[t]he person against whom the force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcefully entered and is present within, a dwelling, residence or occupied vehicle; or the person against whom the force is used is or is attempting to unlawfully and forcefully remove another against that other's will from the dwelling, residence or occupied vehicle"; and (2) "[t]he actor knows or has reason to believe that the unlawful and forceful entry or act is occurring or has occurred." 18 PA. CONS. STAT. § 505(b)(2.1); see Childs, 142 A.3d at 829-30. The Supreme Court of Pennsylvania has held that Section 505(b)(2.1) is a procedural—rather than substantive—statutory provision. See Childs, 142 A.3d at 829-33, 835.

Attorney) to include the Castle Doctrine retroactivity argument as part of the appeal in his second (chronologically third) PCRA petition. (Id.)

Gentilquore's claims are unreviewable, many of them for multiple reasons. First, he has either procedurally defaulted most of the claims raised in his Section 2254 petition or they are not subject to federal habeas review. Second, even if he had properly exhausted his claims in state court and they were cognizable on federal review, the statute of limitations for his Section 2254 petition expired in 2021, long before he filed the instant petition in this court. Consequently, the court must dismiss Gentilquore's Section 2254 petition.

## A.    Exhaustion of State Remedies & Reviewability

As explained above, exhaustion of state remedies requires a claim to be "fairly presented" to the state courts (by invoking one complete round of the state's established appellate review process) and that the claim be adjudicated on the merits. See Carpenter, 296 F.3d at 146 (quoting O'Sullivan, 526 U.S. at 844-45); see also Johnson, 568 U.S. at 302. It appears that only one of Gentilquore's instant habeas claims was fairly presented to the state courts through appellate review and adjudicated on the merits.

Initially, the court observes that none of the claims raised on direct appeal are included in the instant petition. After Gentilquore's direct appeal rights were reinstated, he asserted four issues on appeal: (1) an evidentiary challenge

regarding the trial court's admission of Rule 404(b) evidence of "prior wrongs" to prove Gentilquore's state of mind; (2) an evidentiary challenge to the trial court's admission of allegedly cumulative and prejudicial testimony about Gentilquore firing guns on his property at night; (3) an evidentiary challenge to the trial court's admission of color photographs of the victims and publication of those photos to the jury; and (4) a request for a new trial based on amendments to the Castle Doctrine, 18 PA. CONS. STAT. § 505(b)(2.1). Gentilquore, No. 1860 MDA 2013, 2014 WL 10826236, at *3.

To the extent that either ground two or ground three of Gentilquore's Section 2254 petition could be interpreted as asserting a challenge to the Pennsylvania Superior Court's denial of his fourth claim on direct appeal—*i.e.*, his request for a new trial based on amendments to the state's Castle Doctrine and purported retroactivity of those amendments—that claim of state-law error is not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."); Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) ("[A] state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."). As the Supreme Court of the United States has repeatedly admonished, "it is not the province of a federal

habeas court to reexamine state-court determinations on state-law questions."
Wilson v. Corcoran, 562 U.S. 1, 5 (2010) (quoting Estelle, 502 U.S. at 67-68).

This leaves the PCRA claims Gentilquore properly presented on appeal to the Pennsylvania Superior Court which were adjudicated on the merits. In his "first" PCRA appeal (chronologically his second),[2] Gentilquore raised three claims of ineffective assistance of trial counsel: (1) failing to call an expert witness at trial to explain the fight-or-flight response in relation to the shooting, (2) failing to file a pretrial motion seeking the blood alcohol content (BAC) of the victims, and (3) failing to file a motion *in limine* to preclude the introduction of an irrelevant AR-15 rifle or object to its admission during trial. Gentilquore, No. 295 MDA 2019, 2020 WL 1304173, at *3-4. These claims were reviewed and denied on the merits by the Superior Court and thus were properly exhausted for Section 2254 purposes.

In his "second" PCRA appeal (chronologically his third), Gentilquore again asserted three claims: (1) whether he was entitled to retroactive application of amendments to the Castle Doctrine, 18 PA. CONS. STAT. § 505(b)(2.1); (2) ineffective assistance of PCRA counsel for failing to properly present the issue of retroactive application of amendments to the Castle Doctrine; and (3) whether

---

[2]  Although Gentilquore raised numerous ineffective-assistance claims in his initial (chronologically first) PCRA petition, the Superior Court did not address most of those claims and instead granted relief on the sole basis that his attorney had been constitutionally deficient in failing to properly file a PA. R. APP. P. 2119(f) statement during direct appeal. See Gentilquore, No. 1461 MDA 2012, 2013 WL 11254722, at *2-4.

"equity, truth, and justice call for [Gentilquore] to be awarded a new trial based upon his case's tortured history and the litany of errors committed by prior counsels that have prejudiced his due process rights resulting in his continued incarceration for the last sixteen (16) years." <u>Gentilquore</u>, No. 981 MDA 2022, 2023 WL 3243499, at *3.  None of these claims were adjudicated on the merits by the Superior Court, however, because Gentilquore's second PCRA appeal was found to be untimely and thus jurisdictionally barred.  <u>See id.</u>, at *5-6.[3] Because there was no adjudication on the merits, the claims were not exhausted.

Accordingly, the *only* claims that Gentilquore properly exhausted in state court are the three ineffective-assistance claims raised during his first (chronologically second) PCRA appeal.  Under liberal construction, Gentilquore's Section 2254 petition asserts only one of these exhausted ineffective-assistance claims: failure to file a pretrial motion seeking the blood alcohol content of the victims.  (<u>See</u> Doc. 1 at 5 (alleging that trial counsel "failed to request the [t]oxicology report" for the victims)).  That claim will be addressed below.

---

[3] Two of these three claims are also not cognizable on federal habeas review.  As noted earlier, whether the state court properly applied a statutory amendment on direct appeal is a matter of state law that is not subject to federal habeas review.  <u>See supra</u> pp. 12-13.  Additionally, Gentilquore's claim that his post-conviction counsel was ineffective is likewise not subject to federal review.  It is well settled that there is no federal constitutional right to counsel in state post-conviction proceedings, <u>see</u> Pennsylvania v. Finley, 481 U.S. 551, 555 (1987), and thus there is no Sixth Amendment right to effective assistance of state post-conviction counsel, <u>see</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 752 (1991) (citing <u>Wainwright v. Torna</u>, 455 U.S. 586, 587-88 (1982)).

As to the other claims in the instant Section 2254 petition, Gentilquore procedurally defaulted those claims (or the claims are not cognizable), and he has not established cause or prejudice to excuse that default. Those remaining claims, therefore, are unreviewable. Martinez, 566 U.S. at 9.

**B.    Merits of Single Exhausted Claim**

Assuming, only for the sake of argument, that Gentilquore's single exhausted ineffective-assistance claim could be reviewed by this court, it is nonetheless meritless. A collateral attack based on ineffective assistance of counsel in violation of the Sixth Amendment is governed by the familiar two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on such a claim, a criminal defendant must demonstrate that (1) counsel's representation fell below an objective level of reasonableness based on prevailing professional norms, and (2) the deficient representation was prejudicial. Id. at 687-88. The defendant bears the burden of proving both prongs. See id. at 687.

In determining whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be highly deferential toward counsel's conduct. Id. at 689. There is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim"

of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90). To satisfy the prejudice prong, the defendant must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. The district court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one. See id. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

When a claim of ineffective assistance of counsel has been exhausted in state court, review of that claim by a federal habeas court is significantly circumscribed. The federal court does not review the ineffectiveness claim de novo; rather, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable." Harrington v. Richter, 562 U.S. 86, 101 (2011); Collins v. Sec'y of Pa. Dep't of Corr., 742 F.3d 528, 546-47 (3d Cir. 2014). Under this "doubly" deferential standard, "so long as fairminded jurists could disagree on the correctness of the state court's decision," a state court's determination that a Strickland claim lacks merit precludes federal habeas relief. Harrington, 562 U.S. at 101, 105 (citation omitted).

The Pennsylvania Superior Court reviewed this ineffectiveness claim and upheld the PCRA court's determinations as to both the performance and prejudice Strickland prongs.  See Gentilquore, No. 295 MDA 2019, 2020 WL 1304173, at *4.  Specifically, the panel credited trial counsel's reasonable, strategic reasons for not requesting the BAC results, agreeing that other evidence of the victims' intoxication had been admitted at trial and that if the victims were found to be "severely intoxicated," the jury could have viewed them as "helpless and more vulnerable" rather than a danger to Gentilquore.  See id. The Superior Court further explained that Gentilquore had "failed to persuade" the court that "awareness of the exact BAC levels of the victims would have changed the outcome of his trial."  Id.

The Superior Court's determination on this Strickland claim was reasonable.  During the evidentiary hearing, trial counsel articulated specific, strategic reasons for not requesting the BAC testing results.  The state courts found those explanations convincing, which finding was not unreasonable in any sense of the word.  Accordingly, trial counsel established that their decision did not fall below an objective level of reasonableness based on prevailing professional norms, and thus there was no deficient performance.  The state court's application of Strickland was reasonable and therefore—even if this claim could be reviewed—it would not warrant relief.

17

## C.    Statute of Limitations

Regardless of whether Gentilquore exhausted any claim or could demonstrate cause and prejudice to excuse his default, he faces a more definitive barrier to federal habeas relief.  Gentilquore's petition is barred by Section 2254's statute of limitations and he has not established a basis for tolling that limitations period.

The AEDPA contains a one-year statute of limitations for state prisoners seeking habeas corpus relief in federal court.  See 28 U.S.C. § 2244(d)(1).  In most cases, that one-year clock begins to run when the state conviction becomes "final," as indicated by "the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  AEDPA expressly provides for tolling of this limitations period when "a *properly* filed application for State post-conviction or other collateral relief" for the at-issue judgment is "pending."  28 U.S.C. § 2244(d)(2) (emphasis supplied).

Gentilquore's state-court judgment of sentence was imposed on December 21, 2006.  However, he was ultimately successful in getting his direct appeal rights reinstated *nunc pro tunc*, and his subsequent, fully adjudicated direct appeal was denied almost eight years later on September 9, 2014.  He timely sought review with the Supreme Court of Pennsylvania, which denied his petition for allowance of appeal on April 8, 2015.  Gentilquore then had 90 days to

petition the Supreme Court of the United States for a writ of certiorari, but no such petition was filed. Consequently, Gentilquore's conviction became "final" for AEDPA purposes on July 7, 2015. See 28 U.S.C. § 2244(d)(1)(A); Gonzalez v. Thaler, 565 U.S. 134, 150 (2012).

### 1. Statutory Tolling

Gentilquore timely filed a first (chronologically second) *pro se* PCRA petition on May 29, 2015, before his time to petition for a writ of certiorari with the United States Supreme Court had expired. This properly filed PCRA petition paused the clock on his Section 2254 limitations period, see 28 U.S.C. § 2244(d)(2), leaving the full 365 days in which to seek federal habeas relief after exhaustion of state-court remedies. On March 18, 2020, the Superior Court denied Gentilquore's PCRA appeal. Under Pennsylvania law, he had 30 days to file a petition for allowance of appeal with the Supreme Court of Pennsylvania, see PA. R. APP. P. 1113(a), but no such petition was filed. Thus, Gentilquore's AEDPA limitations period began to run on April 18, 2020. Gentilquore had 365 days from April 18, 2020, or until April 19, 2021,[4] to file a timely habeas petition under 28 U.S.C. § 2254.

---

[4] The final day of Gentilquore's 365 days fell on Sunday, April 18, 2021. The Federal Rules of Civil Procedure, however, provide that "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." FED. R. CIV. P. 6(a)(1)(C). Therefore, the AEDPA limitations period did not expire until Monday, April 19, 2021.

Gentilquore did not file any such federal petition at that time. Instead, he returned to state court and filed a second (chronologically third) PCRA petition on May 14, 2020, alleging that his PCRA attorney was ineffective and challenging the imposition of restitution.

This PCRA petition, however, did *not* toll the AEDPA's statute of limitations because it was not a "properly filed application for State post-conviction . . . review." 28 U.S.C. § 2244(d)(2). As the Pennsylvania Superior Court explained, Gentilquore's second (chronologically third) PCRA petition was filed beyond the PCRA's statute of limitations and he had failed to allege and prove an exception to the time bar under 42 PA. CONS. STAT. § 9545(b)(1)(i)-(iii). See Gentilquore, No. 981 MDA 2022, 2023 WL 3243499, at *5 n.6. Thus, although the PCRA court considered and denied the second (chronologically third) PCRA petition on the merits, it had no jurisdiction to do so. See id. Such an untimely state post-conviction petition is not "properly filed" and does not toll the AEDPA's statute of limitations. See Pace v. DiGuglielmo, 544 U.S. 408, 414, 417 (2005) (holding that, because state court rejected PCRA petition as untimely, petitioner was "not entitled to statutory tolling under § 2244(d)(2)"); Wallace v. Mahanoy, 2 F.4th 133, 149 (3d Cir. 2021) (holding that petitioner's PCRA petition was not "properly filed" for statutory tolling purposes because state court had dismissed the petition as untimely and federal courts must "afford deference" to that decision).

Gentilquore also did not avail himself of the option of filing a protective Section 2254 petition in federal court and then seeking a stay and abeyance while he pursued his additional unexhausted PCRA claims.  See Helluva v. Brooks, 581 F.3d 187, 190 (3d Cir. 2009); Crews v. Horn, 360 F.3d 146, 154 (3d Cir. 2004).  Consequently, Gentilquore's federal habeas petition, which was filed in March 2024, is almost three years late and cannot be saved by statutory tolling under Section 2244(d)(2).  The instant petition, therefore, is time-barred unless Gentilquore can establish a basis for equitable tolling.

### 2.    Equitable Tolling

AEDPA's statute of limitations is subject to equitable tolling.  Martin v. Adm'r N.J. State Prison, 23 F.4th 261, 272 (3d Cir. 2022) (citing Holland v. Florida, 560 U.S. 631, 645-49 (2010)).  Application of this doctrine, however, occurs "only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice," and must be determined on a case-by-case basis.  Id. (alteration in original) (quoting LaCava v. Kyler, 398 F.3d 271, 275 (3d Cir. 2005)) (citing Munchinski v. Wilson, 694 F.3d 308, 329 (3d Cir. 2012)).

To establish entitlement to equitable tolling, the petitioner must show that (1) "he has been pursuing his rights diligently," and (2) "some extraordinary circumstance" prevented him from timely filing his Section 2254 petition.  Holland, 560 U.S. at 649 (citation omitted).  The diligence required is "reasonable

diligence," not "maximum feasible diligence." Id. at 653 (citations omitted); Ross
v. Varano, 712 F.3d 784, 799 (3d Cir. 2013). Finally, the equitable tolling
standard is conjunctive, requiring the petitioner to establish both elements before
tolling is permitted. Sistrunk v. Rozum, 674 F.3d 181, 190 (3d Cir. 2012).

Gentilquore has not made this difficult showing. He appears to argue that
equitable tolling should apply because of the COVID-19 pandemic and "clear
ineffective assistance of counsel." (Doc. 19 ¶¶ 2, 10).

As to the COVID-19 pandemic, it is plainly apparent that courts and prisons
continued to operate during this time. Prisoners continued to file civil rights
actions and habeas corpus petitions despite the changed circumstances in their
facilities of confinement. Gentilquore argues that the pandemic caused the
Pennsylvania Department of Corrections to close law libraries and to restrict
access to law library books and services, (see Doc. 19 ¶ 2), but he has not
explained how these alleged circumstances prevented him from filing a timely
protective habeas petition in this court. See Ross, 712, F.3d at 803 (explaining
that, in the context of equitably tolling the time to file a habeas petition, a
petitioner must show "a causal connection, or nexus, between the extraordinary
circumstances he faced and the petitioner's failure to file a timely federal
petition"). Gentilquore, after all, was well aware of the post-conviction claims he

desired to raise, as he had been litigating those claims in state court for nearly a decade.

Furthermore, no legal research was required for Gentilquore to assert these claims in a federal habeas petition.  Section 2254 petitions do not require legal argument or citation to case law but rather only that a petitioner "specify all the grounds for relief" and "state the facts supporting each ground[.]"  See 28 U.S.C. § 2254 Rule 2(c)(1)-(2); cf. Dates v. Winters, No. 22-2253, 2022 WL 17958626, at *2 (3d Cir. Dec. 27, 2022) (nonprecedential) (finding that inmate had failed to show how COVID-19-related law library closure prevented him from timely filing a protective civil rights complaint that required only "the facts underlying his claim" and not citation to case law or legal authority).  In determining whether a petitioner faced "extraordinary" circumstances such that equitable tolling is implicated, "the proper inquiry is not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, . . . but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period."  Ross, 712 F.3d at 802-03 (emphasis omitted) (quoting Pabon v. Mahanoy, 654 F.3d 385, 400 (3d Cir. 2011)).  The COVID-19 law library restrictions alleged by Gentilquore presented little if any obstacle to timely filing a protective federal habeas petition.  Accordingly, such allegations—even if taken as true—do not warrant equitable tolling.

Gentilquore also appears to assert that equitable tolling should apply due to ineffective assistance of counsel. (<u>See</u> Doc. 19 ¶ 10). In rare circumstances, egregious negligence or malfeasance by a petitioner's counsel can satisfy the "extraordinary circumstance" requirement for equitable tolling of the statute of limitations. <u>See Ross</u>, 712 F.3d at 800. Gentilquore, however, does not specify how any of his attorneys were constitutionally deficient with respect to protecting his AEDPA limitations period. He instead rehashes several of his claims of ineffective assistance of trial and appellate counsel in his underlying criminal prosecution. (<u>See</u> Doc. 19 ¶¶ 3-9). None of these allegations is relevant to equitable tolling, as they do not concern or excuse Gentilquore's nearly three years of delay in filing his Section 2254 petition.

Gentilquore has failed to establish that extraordinary circumstances existed and prevented him from timely filing a federal habeas petition. Thus, even if he was acting with due diligence, he cannot show that equitable tolling is applicable in this case. <u>See Sistrunk</u>, 674 F.3d at 190 (requiring petitioner to demonstrate both elements of equitable tolling before tolling is permitted). His Section 2254 petition, therefore, is patently untimely and must be dismissed.

## IV.    CONCLUSION

Based on the foregoing, the court must dismiss Gentilquore's petition for a writ of habeas corpus under 28 U.S.C. § 2254. The petition is barred by

AEDPA's statute of limitations, and Gentilquore has not established any basis for tolling this limitations period.  The court will likewise deny a certificate of appealability, as Gentilquore has failed to make a substantial showing of the denial of a constitutional right, <u>see</u> 28 U.S.C. § 2253(c)(2), or that "jurists of reason would find it debatable" whether this court's procedural ruling is correct, <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  An appropriate Order follows.


**Date:** ___6/5/25___

                                        **BY THE COURT:**

                                        **JUDGE JULIA K. MUNLEY**
                                        **United States District Court**